UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rhonda M. Dendinger,

        Plaintiff,

        v.                           Case No. 2:04cv367

State of Ohio, BCI&I,                Judge Michael H. Watson

        Defendants.

_____

**MEMORANDUM OPINION AND ORDER**

_____

      This matter is before the Court upon Defendant State of Ohio, Bureau of Criminal

Identification and Investigation's Motion for Summary Judgment. (Docs. 27, 28) Plaintiff

Rhonda Dendinger has filed a Memorandum in Opposition (Doc. 34) and Defendant filed

a Reply. (Doc. 37) Also before the Court is Plaintiff's Motion to Strike Affidavit of Kurt

Shearer and BCI Internal Investigation Report. (Doc. 35) Defendant filed a Memorandum

in Opposition, and in the alternative, Motion to Strike Plaintiff's Affidavit. (Doc. 36) Plaintiff

filed a Memorandum in Opposition to Defendant's alternative Motion, and Defendant filed

a Reply. (Docs. 38, 39) Plaintiff then filed a Motion to Strike Defendant's Reply. (Doc. 41)

This matter is now ripe for review.

**I.    FACTUAL BACKGROUND**

      Plaintiff was employed by the Ohio Attorney General's Office as a Special Agent

from January of 1988 until she resigned on March 20, 2003. (Doc. 28, Ex A, Rhonda

Dendinger Depo. at 17, 124)   The Bureau of Criminal Identification and Investigation ("BCI&I") is a division of the Ohio Attorney General's Office.

Early in her career with BCI&I, Plaintiff was assigned to the Erie County Drug Task Force. (Id. at 55)  The task force was not affiliated with BCI&I, but agents assisted the task force.  (Id. at 55-56)  In 1990 or 1991, John Onan, the commander of the task force, refused to allow Plaintiff to work either task force or "controlled buy" cases after she became too well known and could no longer work undercover cases.  (Id. at 52-53, 56)  Onan also refused to give Plaintiff equipment called a "raid bag," and expected her to work extra hours even though she was not paid for overtime  (Id. at 59, 60-61)  At the time, Onan was employed by the Erie County Sheriff's office, but he later became the assistant superintendent of BCI&I.  (Id. at 56)

In 1991, Plaintiff was subjected to a sexual advance by her supervisor, Daryl Johnson.  (Id. at 76)  Johnson later brought up the incident, apologized, and promised it would not happen again.  (Id. at 79-80)

In 1992, Plaintiff was subjected to another sexual advance by Ted Almay, who was her supervisor at the time. (Id. at 68-71)  Plaintiff did not report the encounter.  (Id. at 71)  Some time in the early nineties, Almay ceased being Plaintiff's direct supervisor.  (Id. at 19)  Almay later became superintendent of BCI&I.  (Id. at 62)

In 1994, Plaintiff first applied for a position in the Major Crimes unit.  (Id. at 24)  This position would not be a promotion in terms of an increase in pay or status, but instead would be a lateral transfer.  (Id. at 29, 88-89)  Plaintiff states that she was denied assignment to the Major Crimes unit on at least three occasions despite the fact that she had more experience and training than the male employees who received the positions.

(Id. at 25-28)  However, Plaintiff admits that on the first occasion, Karen Robori, a female, was assigned to one of the open positions.  (Id. at 27)  Plaintiff also thinks that even though Almay told her that she deserved the position, Almay did not want her to have the position after she rejected his advances.  (Id. at 62)  In November of 1996, Plaintiff was assigned to the unit, but Plaintiff maintains that this was because she filed a grievance.  (Id. at 31)

Plaintiff alleges that her superiors did not consider maternity leave a valid health problem requiring leave.  Plaintiff states that in 1992 and 1996, Pete Tobin, who was Plaintiff's supervisor indirectly, and Onan complained to others that Plaintiff was on maternity leave.  (Id. at 35-36, 38, 39)  Plaintiff states that in 1995 or 1996, she was told that Almay also thought that she was taking too much time off for maternity leave.  (Id. at 64)

Plaintiff states that on other occasions when she was sick, Tobin would complain that Plaintiff was taking too much time off and state that she was not really sick.  (Id. at 35)  Plaintiff states that Onan would complain to her direct supervisor, Phil Lucas, every time she took time off.  (Id. at 39-40)  This last occurred in October of 2002.  (Id. at 42)  Plaintiff states that in addition to the normal paperwork, Onan required her to have a second note from her doctor before she could return to work from her leave.  (Id. at 40-41)  Plaintiff states that males were not required to provide this additional information.  (Id. at 41)

Plaintiff also states that she was told that Onan told Lucas to lower her evaluation in 2001.  (Id. at 41-42, 86)  However, Plaintiff admits that her evaluation was not in fact lowered.  (Id. at 87)  Plaintiff did not file a grievance or complain to anyone in the Attorney General's Office about Onan's actions.  (Id. at 43)

In 1998, Plaintiff suffered an injury to her hand from a ricocheted bullet.  (Id. at 97)  Plaintiff states that she was required to use her personal time even though it occurred while she was qualifying to use her duty weapon.  (Id. at 97)  This personal time was eventually returned to her after she received workers' compensation benefits.  (Id. at 98)

Lucas was Plaintiff's supervisor from late 1999 or early 2000 until her resignation in 2003.  (Id. at 44)  Plaintiff states that while Lucas was her supervisor, he made the work environment very uncomfortable for her.  (Id. at 44-45)  Plaintiff states that Lucas treated her differently from the males, made it obvious that he did not like females, made female jokes, spoke condescendingly to her, rarely assigned her cases, and did not assign her to the Terrorism Task Force.  (Id. at 44)  Specifically, Lucas requested reports from Plaintiff after asking her in a "real grumpy, mean way" to come into his office.  (Id. at 45)  Plaintiff states that Lucas would request reports from the males in the office by asking in a "nice, normal tone."  (Id. at 45-46)  Plaintiff admits that there were times when her reports were late, but explained that everyone would be late at different times.  (Id. at 47)  Plaintiff also states that Lucas would not tell her about educational classes and seminars, but would tell her male co-workers.  (Id. at 89)  Plaintiff states that Lucas claimed that he could not put Plaintiff on the Terrorism Task Force because he did not know when she was going to have a headache.  (Dendinger Aff. ¶ 23)

Plaintiff states that she spoke with Kurt Shearer about Lucas.  (Id. at 81)  Shearer was once Plaintiff's supervisor, and later became deputy superintendent of BCI&I.  (See Doc. 28, Ex. O, Kurt Shearer Aff. ¶¶ 1-2)  Specifically, Plaintiff states that she told Shearer that she did not think that Lucas liked females.  (Dendinger Depo. at 81)  Plaintiff believed that she was making a complaint when she talked to Shearer.  (Id. at 83)

In 2001, Plaintiff suffered a stress fracture in her foot outside of work.  (Id. at 99)
Plaintiff was placed on disability leave, but she believed that she should have been able
to do light duty work.  (Id. at 99)

On July 23, 2001, Lucas counseled Plaintiff about her lack of filing reports in a
timely manner, lack of investigative activity in her investigative reports, and her failure to
file bi-weekly activity reports in a timely manner.  (Id. at 47; Doc. 28, Ex. Q, Megan Kish Aff.
¶ 5)

On December 10, 2001, Lucas issued a verbal reprimand to Plaintiff for failing to
complete investigative reports in a timely manner and for lack of documentation of
investigative activity in her case files.  (Dendinger Depo. at 116; Kish Aff. ¶ 5)  The
reprimand was reduced to writing and placed in Plaintiff's personnel file.  (Dendinger Depo.
at 117)  Plaintiff did not object to the reprimand.  (Id.)

Plaintiff explains that she felt that she could not make a complaint about the sexual
harassment she was experiencing because the harassment was coming from the
superintendent and assistant superintendent.  (Id. at 94)

On December 5, 2002, Lucas filed an internal complaint against Plaintiff requesting
that Internal Affairs investigate possible misconduct by Plaintiff.  (Doc. 28, Ex. E)  The
allegations of misconduct were that Plaintiff told her supervisor and secretary that she was
out traveling on BCI&I business when she was actually at home; and Plaintiff falsified her
weekly reports and time sheets by entering false information such as the number of hours
worked, law enforcement locations visited, miles driven, and statistics claimed.  (Id.)  A
global positioning system ("GPS") was installed on the state vehicle assigned to Plaintiff
and physical surveillance of Plaintiff's house was conducted.  (Id.)  The investigation was

completed on February 10, 2003. (Id.) The allegations of misconduct were sustained, and the findings amounted to serious misconduct. (Id.) The investigator recommended that the matter be handled administratively rather than being referred to a prosecutor for criminal charges. (Id.)

In March of 2003, Plaintiff was placed on administrative leave and notified that an internal investigation was being conducted into alleged misconduct by her. (Id. at 118) Plaintiff appeared for an investigatory interview on March 14, 2003. (Id. at 123) However, Plaintiff, upon advice of her counsel, refused to participate in the interview. (Id. at 124) Plaintiff received a notice dated March 14, 2003 that the allegations against her had been sustained, and it was recommended that she be terminated. (Id. at 120) Plaintiff was informed that she would have an opportunity to respond to the charges in a pre-termination conference on March 21, 2003. (Id.) Plaintiff did not attend this conference. (Id. at 122) Instead, on March 20, 2003, Plaintiff submitted a letter of resignation. (Id. at 124)

Plaintiff has been diagnosed with having migraine headaches. (Id. at 101) Plaintiff has taken medication for the headaches since 1992. (Id. at 102) Plaintiff states that at times her headaches were so severe that she has to go into a dark room without any noise until they subside. (Doc. 34, Ex. 1, Dendinger Aff. ¶5) Plaintiff states that the headaches effected her work with BCI&I because she had to take off work to have pain block injections. (Dendinger Depo. at 106) However, Plaintiff states that she was usually able to work despite her headaches. (Id.)

Plaintiff has also been diagnosed with depression. (Id. at 104) Plaintiff states that she has taken various medications at different times for her depression. (Id. at 104-106) Plaintiff states that she has been able to work despite her depression, and has not had to

take off work because of her depression.  (Id. at 106)  While Plaintiff told Defendant about

her headaches, she did not tell Defendant about her depression.  (Id. at 107-108)  Plaintiff

states that she did not ask Defendant for assistance with either condition.  (Id. at 108)

Plaintiff's Complaint was filed on May 12, 2004.  (Doc. 1)  In her Complaint, Plaintiff

claims: (1) violations of Title VII, 42 U.S.C. § 2000e, *et seq*. ("Title VII") for sex

discrimination and sex harassment; (2) violations of Americans with Disabilities Act, §

12101, *et seq*. ("ADA"); (3) violations of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*.; (4)

violations of Ohio Rev. Code § 4112.01, *et seq*.; and (4) intentional infliction of emotional

distress.[1]

## II.    ARGUMENTS OF THE PARTIES

Defendant argues that Plaintiff's claim of gender discrimination under Title VII is

barred by the statute of limitations.  Defendant argues further that if the claim is not time-

barred, Plaintiff cannot show that Defendant took an adverse employment action against

her because Plaintiff voluntarily resigned.  Defendant argues that Plaintiff's claim of sexual

harassment under Title VII is also time-barred, or in the alternative, cannot succeed

because Plaintiff failed to report the harassment.  Defendant argues that it is entitled to

Eleventh Amendment immunity from Plaintiff's claim for money damages under the ADA.

Defendant maintains that Plaintiff's claims of discrimination under the Rehabilitation Act

fail because she is not an individual with a disability, and if she does suffer from a

disability, there is no evidence that Defendant failed to provide a reasonable and necessary

---

[1]While Plaintiff alleges retaliation in her charge filed with the Ohio Civil Rights Commission and makes references to retaliatory actions in her Memorandum in Opposition, Plaintiff did not specifically allege a retaliation claim in her Complaint.

accommodation for her disability.  Defendant argues that this Court lacks jurisdiction over Plaintiff's claim under Ohio Revised Code § 4112.02 because there has been no finding by the Court of Claims concerning the applicability of state law immunity.  Finally, Defendant argues that Plaintiff is unable to present evidence to support her claims of intentional infliction of emotional distress.

Plaintiff responds that her Title VII claims are not time-barred because she has been subjected to continuing discrimination which cumulated in her constructive discharge. Plaintiff explains that she has been harmed by a policy of discrimination or a series of acts by Defendant.  As additional proof that her claims are timely, Plaintiff points out that the charge she filed with the EEOC was not dismissed.

As evidence of an adverse employment action, Plaintiff states that she was constructively discharged, wrongfully reprimanded and investigated, was not assigned cases on the same basis as men, and was generally not treated as "real" agent as compared to her male co-workers.

Plaintiff argues that Eleventh Amendment immunity does not bar her action for declaratory, injunctive, or equitable relief, nor does it bar her action under the Rehabilitation Act.[2]

---

[2]Plaintiff also argues that her constitutional claims are not barred by the Eleventh Amendment, but Plaintiff's Complaint does not allege any constitutional claims.

Finally, Plaintiff argues that her claim for intentional infliction of emotional distress is so intertwined with her constitutional claim that these acts constitute instances of constitutional violation or retaliation.[3]

In her Motion to Strike Affidavit of Kurt Shearer and BCI Investigation Report, Plaintiff argues that it is well-settled that investigative reports constitute hearsay, and therefore are not admissible.  Plaintiff also argues that Shearer's affidavit is comprised of conclusory allegations and not based on personal knowledge.

In its Motion to Strike Plaintiff's Affidavit, Defendant argues that Plaintiff's affidavit constitutes hearsay and many of Plaintiff's statements contradict her deposition testimony.

## III.    ANALYSIS

A.    <u>Motion to Strike</u>.

Federal Rule of Civil Procedure 56(e) requires that affidavits that are used in support of summary judgment must be based on personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  In general, hearsay may not be used to support a motion for summary judgment.  *Farra v. General Motors Corp.*, 163 F.Supp.2d 894, 903 (S.D.Ohio 2001), *quoting*, *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment.").  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).

---

[3]Again, Plaintiff has not alleged any constitutional claims, and therefore these arguments will not be addressed.

Plaintiff argues that it is "well-settled" that investigative reports constitute hearsay, but cites no caselaw to support that proposition. Plaintiff's one citation is to an unpublished case holding that it was within the trial court's discretion to consider a staff report prepared by the Michigan Civil Rights Commission. *See Waller v. Thames*, 1988 WL 76532, *2 (6th Cir. 1988) (unpublished). Even if the Court were to find that the investigative report is hearsay, the report would be admissible as a public record under Federal Rule of Evidence 803(8).

Plaintiff argues that Shearer's affidavit is comprised of conclusory allegations and not based on personal knowledge. While affidavits containing mere conclusions have no probative value, *see In re Arnold*, 76 B.R. 109, 110 (Bkrtcy. S.D.Ohio 1987), *citing*, *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135, 139 (5th Cir.1973) *and Gordon v. Terry*, 684 F.2d 736, 744 (11th Cir.1982), this is not a basis upon which to exclude an affidavit. Therefore, even if the Court were to find that Shearer's affidavit includes conclusions, this would only go to its probative value, and not its admissibility. Finally, the Court finds that Shearer's affidavit is based on personal knowledge, as deputy superintendent of BCI&I, Plaintiff's former supervisor and a fellow agent who worked with Plaintiff. (See Doc. 28, Ex. O, Kurt Shearer Aff. ¶¶ 1-2) Therefore, Plaintiff's Motion to Strike Affidavit of Kurt Shearer and BCI Internal Investigation Report is DENIED.

Defendant argues that Plaintiff's affidavit constitutes hearsay and many of Plaintiff's statements contradict her deposition testimony. Defendant only references the paragraph numbers in the affidavit which contain hearsay statements, and does not state which statements contradict her deposition testimony. Defendant corrected this deficiency in its Reply to Plaintiff's Memorandum in Opposition. Plaintiff now seeks to strike this Reply,

arguing that Defendant's Reply does not conform with S.D. Ohio Civ. R. 7.2(d), which requires all evidence used to support a motion shall be included in the primary memorandum.  However, this rule also states that "[e]vidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition."  The Court finds that the additional information Defendant has provided the Court in its Reply is limited to that which was necessary to rebut Plaintiff's arguments in her Memorandum in Opposition.  Therefore, Plaintiff's Motion to Strike Defendant's Reply is DENIED.

Having reviewed Plaintiff's Affidavit, the Court GRANTS in part and DENIES in part Defendant's Motion to Strike Plaintiff's Affidavit for the following reasons:

It is the burden of the party submitting the affidavit to show circumstances indicating the witness has based the statement on personal knowledge. *See Schneider v. United States*, 257 F.Supp.2d 1154, 1158 (S.D. Ind. 2003) (and cases cited therein); *see also Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 956 (S.D.Ohio 2000). The following statements will be struck because there is no indication that they are based upon Plaintiff's personal knowledge:

> "Mr. Almay and Mr. Shearer also knew of my headache problem . . ." (Dendinger Aff.  ¶10)

> "I was also denied time off and/or was criticized for taking time off . . . while male employees were not treated in this manner.  In fact, I was criticized by my superiors for taking time off in connection with childbirth despite the fact that my male contemporaries were not criticized when they took time off for health reasons." (Id. ¶12)

> ". . . There were no complaints whatsoever when male employees took time off, including but not limited to Rex Russell who took similar time off for back surgery."  (Id. ¶13)

". . . I was also required to take personal time off when injured on the job . . . despite the fact that male employees are not required to do so under similar circumstances."  (Id. ¶14)

"My work was also closely monitored and my activities questioned on a more frequent basis than my male contemporaries . . ."  (Id. ¶16)

"I was also denied training . . . my male co-workers who had not even applied to attend the training were permitted to do so."  (Id. ¶17)

"Similarly, my male co-workers, including agents Rex Russell and Tom Brokamp, were permitted to attend several schools or seminars in 2001 through 2003 . . ."  (Id. ¶18)

"I was also denied assignment to the Major Crimes unit on at least three occasions despite the fact that I had more experience and training than the male employees who received the positions . . ."  (Id. ¶26)

The Court finds that the following statements will be struck on the basis that they are

hearsay for which there is no exception:

"Mr. Lucas also advised me that Assistant Superintendent John Onan complained when I took time off . . . " (Dendinger Aff. ¶13)

"For example, in mid October, 2002 Mr. Lucas told me that Mr. Onan called specifically to see where I was" (Id. ¶16)

". . . Mr. Shearer (Lucas' supervisor) told Mr. Lucas to watch me despite the fact that Mr. Lucas was the problem and I was the victim" (Id. ¶29)

". . . Mr. Lucas told me that Assistant Superintendent Onan (male) asked him to lower my evaluation in 2001 . . ." (Id. ¶36)

". . . When the investigation was over and no wrong could be found against me, Mr. Lucas told Pat Meyers that he just 'wanted Rhonda [me] gone'" (Id. ¶40)

". . . Mr. Lucas told Dave Barnes that he [Lucas] treated me more harshly than the men because 'that was what he was ordered to do.'" (Id. ¶42)

It is well-settled that a party who has been examined at length at deposition cannot

create a genuine issue of material fact by later submitting an affidavit that contradicts

previously sworn testimony. *Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir.1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Defendant argues that in paragraph 28 of Plaintiff's Affidavit, Plaintiff's statement that she complained of discriminatory acts and conduct contradicts her deposition testimony that she did not complain of the discriminatory acts. However, the Court notes that in her deposition Plaintiff testified that she spoke with Kurt Shearer about Phil Lucas. (Dendinger Depo. at 81) Specifically, Plaintiff states that she told Shearer that she did not think that Lucas liked females. (Id.) Plaintiff explained that she believed that she was making a complaint when she talked to Shearer. (Id. at 83) Therefore, paragraph 28 of Plaintiff's Affidavit will not be struck.

Defendant argues that paragraph 44 should be struck because Plaintiff states the reason she was being investigated was concealed from her, yet in her deposition, Plaintiff stated that she was given notice that she was being investigated for allegations of misconduct and informed of what those allegations were. The Court agrees that Plaintiff's statement in paragraph 44 contradicts her deposition testimony. Therefore, paragraph 44 of Plaintiff's Affidavit shall be struck.

B.    Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of

production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252. However, the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-480 (6th Cir. 1989).

     C.    Statutes of Limitation.

         1.    *Title VII and ADA*.

Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA action. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, (1990). As this Court has explained:

> Before an aggrieved employee in Ohio can file a complaint with the EEOC, she must initiate proceedings with the Ohio Civil Rights Commission ("OCRC"). 42 U.S.C. § 2000e 5(c); *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 621 (6th Cir. 1983); Ohio Rev. Code §§ 4112.03 & 4112.05. Thereafter, any complaint filed subsequently with the EEOC must be so filed within 300 days of the date of the alleged unlawful act. 42 U.S.C. § 2000e 5(e)(1). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge of discrimination within . . . 300 days of the date of the act or lose the ability to recover for it." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2070-71, 153 L.Ed.2d 106 (2002). Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts allegedly in timely filed charges." *Id.* at 2072.

*Shoemaker-Stephen v. Montgomery County Bd. of Com'rs*, 262 F.Supp.2d 866, 875-76 (S.D. Ohio 2003); *see also* 42 U.S.C. § 12117(a) (stating that the procedures set forth in

section 2000e-5 of Title VII are the procedures for any person alleging employment discrimination under the ADA).

Plaintiff filed her charge on June 13, 2003.  (Doc. 1, Ex. 1)  Therefore any discrete retaliatory or discriminatory acts which occurred before August 17, 2002 are time-barred. These acts would include (1) the allegations relating to Plaintiff's work with the Erie County Drug Task Force which occurred around 1990 or 1991; (2) the sexual advance by Daryl Johnson in 1991; (3) the sexual advance by Ted Almay in 1991; (4) Plaintiff's attempts to be assigned to the Major Crimes Unit from 1994 until 1996; (5)  the allegations related to Plaintiff's maternity leave in 1992 and 1995 or 1996; (6) the allegations related to the injury to Plaintiff's hand from a ricocheted bullet in 1998; (7) the allegations related to Plaintiff's stress fracture in her foot in 2001; (8) Onan telling Lucas to lower her evaluation in 2001; (9) the July 23, 2001 counseling from Lucas regarding Plaintiff's work; and (10) the December 10, 2001, verbal reprimand from Lucas.

Plaintiff argues that the allegations related to the Erie County Task Force, her maternity leave, the ricocheted bullet incident, the Major Crimes Unit, as well as  the sexual harassment allegations are not separate claims, but show a continuation of unlawful activity by Defendant.

The Sixth Circuit previously recognized two categories of continuing violations:

> The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes [sic] disparate work assignments or gives unequal pay for equal work. . . . The second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination.  This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure.

*Sharpe v. Cureton*, 319 F.3d 259, 266-67 (6th Cir. 2003), *quoting*, *Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001) (internal quotations and citations omitted).

However, the Sixth Circuit has held that after the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), a plaintiff is precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period. *Sharpe*, 319 F.3d at 268. The Sixth Circuit still recognizes the second category of continuing violations, *i.e.*, those involving a longstanding and demonstrable policy of discrimination. *Id.* However, to show a policy of discrimination, a plaintiff must demonstrate something more than the existence of discriminatory treatment in his or her case. *Id.* at 269. Examples include a policy appearing in a statute or an affirmative action plan. *Id.* "The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *Id.*, *quoting*, *EEOC v. Penton Indus. Publishing Co.*, 851 F.2d 835, 838 (6th Cir. 1988) (citations omitted). Plaintiff has not alleged that she represents a class, nor shown more than the existence of discriminatory treatment in her case. Therefore, the continuing violation doctrine does not save the acts occurring before August 17, 2002 from being time-barred.

As a result, the only acts upon which Plaintiff's claim could be based are: (1) the filing of the December 5, 2002 internal complaint by Lucas; (2) Plaintiff being placed on administrative leave in March of 2003; and (3) Plaintiff's resignation on March 20, 2003, or as Plaintiff alleges, the date she was constructively discharged.

However, Plaintiff has also alleged a hostile work environment claim.  As the Supreme Court has explained, a hostile environment claim is different from discrete acts because, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' "  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  Therefore, [i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period."  *Id.*  "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.*  Therefore, the Court will consider acts occurring outside the filing period if Plaintiff can show that the acts contributed to a hostile work environment which continued during the filing period.

2.   *Rehabilitation Act.*

Unlike Title VII and the ADA, the Rehabilitation Act does not require exhaustion of administrative remedies before bringing a civil action.  *Pendleton v. Jefferson Local School Dist. Bd. of Educ.*, 1992 WL 57421, *6 (6th Cir. 1992) (unpublished).  The Sixth Circuit has applied state statutes of limitations governing personal injury actions in cases brought under the Rehabilitation Act.  *Southerland v. Hardaway Management Co., Inc.*, 41 F.3d 250, 255 (6th Cir. 1994).  In Ohio, the statute of limitations for filing suit under the Rehabilitation Act is two years, consistent with the statute of limitations for actions based on personal torts.  *Knapp v. City of Columbus*, 2002 WL 193849, *4 (S.D. Ohio 2002).  Plaintiff filed her Complaint on May 12, 2004.  Therefore, to the extent that Plaintiff's Rehabilitation Act claim is based on events before May 12, 2002, her claim is barred.

3.   *Chapter 4112 of the Ohio Revised Code.*

Chapter 4112 does not require exhaustion of administrative remedies.  *Harrison v. City of Akron*, 43 Fed.Appx. 903, 905 (6th Cir. 2002) (unpublished), *citing*, *Elek v. Huntington Nat'l Bank*, 573 N.E.2d 1056, 1057-58 (Ohio 1991); *Carney v. Cleveland Heights-Univ. Heights City Sch. Dist.*, 758 N.E.2d 234, 243 (Ohio Ct. App. 2001).  An action under Chapter 4112 is subject to the six-year statute of limitations contained in § 2305.07 of the Ohio Revised Code.  *Benge v. General Motors Corp.*, 267 F.Supp.2d 794, 799-800 (S.D.Ohio 2003), *citing*, *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 638 N.E.2d 991 (1994) (syllabus).  Therefore, to the extent that Plaintiff's claims under Ohio Revised Code § 4112.99 are based on events before May 12, 1998, her claims are barred.

> 4.    *Intentional infliction of emotional distress*.

The four-year statute of limitations contained in § 2305.09(D) of the Ohio Revised Code applies to claims of intentional infliction of emotional distress. *See e.g.*, *Steiner v. Steiner*, 620 N.E.2d 152, 158 (1993).  Therefore, to the extent that Plaintiff's claim of intentional infliction of emotional distress is based on events before May 12, 2000, her claim is barred.

> D.    Title VII.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

> 1.    *Sex discrimination*.

As stated above, the only discriminatory acts which can form the basis of Plaintiff's sex discrimination claim are (1) the filing of the December 5, 2002 internal complaint by

Lucas; (2) Plaintiff being placed on administrative leave in March of 2003; and (3) Plaintiff's alleged constructive discharge on March 20, 2003.

In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing*, *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir.1997).

Plaintiff has not argued that there is direct evidence of discrimination.

Where no direct evidence of discrimination exists, a claim of employment discrimination is to be analyzed using the burden-shifting approach first announced in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  A plaintiff has the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* at 802.

To establish a *prima facie* case of discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action; and (4) that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).

It appears from the memoranda of the parties that the only disputed element is whether Plaintiff suffered an adverse employment action.  An adverse employment action is a materially adverse change in the terms and conditions of employment. *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999).  While Plaintiff's claim of constructive

discharge will be discussed separately below, the Court will attempt to analyze the other "instances of discrimination" which Plaintiff argues constitute adverse employment actions and which are not barred by the statute of limitations.[4]

First, Plaintiff argues that she was wrongfully investigated and not given proper notice of the investigation. Numerous Sixth Circuit cases have held that an investigation is not an adverse employment action. *Newton v. Meijer Stores Ltd. Partnership*, 347 F.Supp.2d 516, 524 (N.D. Ohio 2004), *citing*, *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 409-10 (6th Cir.1999) (holding that monitoring the plaintiff more closely than white employees were monitored did not amount to " 'materially adverse' change in [the plaintiff's] employment status or in the terms and conditions of his employment"); and *Bivins v. U.S. Pipe & Foundry Co.*, 48 Fed. Appx. 570, 572 (6th Cir. 2002) ("[M]ere investigations by an employer do not constitute adverse employment actions."). Therefore, Defendant's investigation into possible misconduct by Plaintiff was not an adverse employment action.

Second, Plaintiff argues that she was not given proper notice of the investigation. While the failure to give proper notice may give rise to another type of claim, it is not clear how this is evidence of an adverse employment action, or an act of discrimination. Plaintiff has not alleged, and there is no evidence in the record, that similarly situated males, *i.e.*, males being investigated for misconduct, were given notice differently. Therefore, the Court finds that the lack of notice was not an adverse employment action.

---

[4]Plaintiff does not specifically state that these "instances of discrimination" are adverse employment actions, but she does discuss them in the context of the adverse employment action element. Therefore, the Court will treat them as such.

As a result, Plaintiff has not made out a *prima facie* case of sex discrimination based on these allegations. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII claim to the extent it is based on these allegations.

2. *Constructive discharge*.[5]

A plaintiff may establish an adverse employment action by demonstrating that he or she was constructively discharged. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001). To demonstrate a constructive discharge, the plaintiff must adduce evidence to show that (1) "the employer . . . deliberately create[d] intolerable working conditions, as perceived by a reasonable person," and 2) the employer did so "with the intention of forcing the employee to quit." *Id.* at 568-69, *quoting*, *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Therefore, both the employer's intent and the employee's objective feelings must be examined. *Id.* at 569.

The Sixth Circuit has held that a court should consider the following factors when analyzing the first prong of the constructive discharge inquiry:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.*

Plaintiff argues that no reasonable person could be expected to appear for work every day without an assignment; to watch while her male co-workers are not only

_____

[5]It is not clear whether Plaintiff intended to present a separate constructive discharge claim, or if she is only alleging a hostile-environment constructive discharge claim. For the sake of completeness, both types of claims will be analyzed.

assigned cases, but assigned cases such as the Terrorism Task force; sit back idly while her superior forgets she exists as to training sessions; and be the subject of an internal investigation.

The manner in which an employer assigns job duties is normally insufficient to establish a constructive discharge as a matter of law.  *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004).  Likewise, the Court finds that Plaintiff's allegations regarding Lucas' failure to tell her about educational classes and seminars does not rise to the level of "intolerable working conditions."  Finally, the Court finds that the fact that Plaintiff was the subject of an internal investigation is not evidence which would show constructive discharge.  *Accord Abel v. Auglaize County Highway Dept.*, 276 F.Supp.2d 724, 737 (N.D.Ohio 2003) (county employee was not constructively discharged as a result of investigation of his conduct of receiving double payments from county for sick/vacation time in violation of county policy).  Therefore, even when examined in the light most favorable to her, Plaintiff has failed to produce evidence sufficient to show that her working conditions were so intolerable that a reasonable person would have felt compelled to resign.  Because Plaintiff has failed to prove the first prong of the test stated in *Logan*, the Court will not address the second prong.  As a result, Plaintiff has not established a *prima facie* case of sex discrimination based on constructive discharge.

However, even if Plaintiff were to have established a *prima facie* case, the Court finds that Plaintiff would not succeed on her claim because she has not shown that Defendant's nondiscriminatory reason for conducting an internal investigation of her was pretext.

If a plaintiff succeeds in establishing a *prima facie* case, an inference of discrimination arises, and the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).  If the defendant articulates a nondiscriminatory reason for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons put forth by the defendant were not its true reasons but were a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse action, or (3) the proffered reason was insufficient to motivate the adverse action.  *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).  The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her remains at all times with the plaintiff.  *Burdine*, 450 U.S. at 253.

Plaintiff has not carried her burden.  Plaintiff does not argue that the reason for conducting the investigation–a complaint alleging misconduct–had no basis in fact, did not actually motivate Defendant to conduct the investigation, or was insufficient to motivate the initiation of an investigation.[6]  Plaintiff merely argues that the investigation was an attempt to force her to resign or find a cause to terminate her.  Such unsupported speculation cannot  form the basis for demonstrating pretext.  *See Sutherland v. Michigan Dept. of*

---

[6]Plaintiff does argue that Defendant's concerns regarding her work performance are pretextual because her performance appraisals show that her work was adequate, and that Plaintiff was performing her job or submitting reports in the same manner as her male counterparts who were not disciplined.  However, Defendant did not instigate the investigation of Plaintiff because of her work performance.  Therefore, this argument is unavailing.

*Treasury*, 344 F.3d 603, 623 (6th Cir. 2003).  Therefore, Defendant is entitled to summary judgment on Plaintiff's Title VII claim in so far as it is based on constructive discharge.

        3.    *Hostile work environment*.

A plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66 (1986); *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 825 (6th Cir. 1997).

A plaintiff must prove that (1) he or she was a member of a protected class; (2) was subjected to unwelcomed sex harassment; (3) the harassment was based on gender; (4) the harassment had the effect of unreasonably interfering with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability.  *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).  The occurrence of sexual harassment is judged in light of "the record as a whole" and "the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred."  *Meritor Savings Bank*, 477 U.S. at 61.

Plaintiff alleges that the hostile work environment created by her supervisors culminated in her constructive discharge.  The Sixth Circuit has explained that when this type of compound claim is made, "[t]he plaintiff must show more than a Title VII violation to prove constructive discharge, so the fact that plaintiff may have proven a hostile work environment is not enough by itself to prove constructive discharge also."  *Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999).  "This heightened constructive discharge standard requires an objective assessment of the employee's feelings, and an inquiry into the employer's intent and the foreseeability of the impact its conduct had on the employee."  *Collette v. Stein-Mart, Inc.*, 126 Fed.Appx. 678, 682 (6th

Cir. 2005) (unpublished), *citing, Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).  Under the objective assessment, the plaintiff must show "working conditions so intolerable that a reasonable person would have felt compelled to resign."  *Pennsylvania State Police v. Suders*,  124 S.Ct. 2342, 2354 (2004).  "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress."  *Id.*, *quoting, Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997).  The "employer" inquiry focuses on whether the employer intended the work environment to cause the employee to resign.  *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir. 1987).  "Intent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions."  *Moore*, 171 F.3d at 1080.

Plaintiff has failed to make out a claim of hostile-environment constructive discharge.  Plaintiff has not shown "working conditions so intolerable that a reasonable person would have felt compelled to resign."  Plaintiff cites to two incidents over a period of fifteen years where she was subjected to sexual advances from two different supervisors.  However, Plaintiff states that when she rejected those advances, the discriminatory treatment towards her escalated, including "being treated as an outsider and not being permitted to interview confidential informants, open new cases, develop cases or conduct her own surveillance."  (Dendinger Aff. ¶ 25)  While "the law recognizes that non-sexual conduct may be illegally sex-based where it evinces 'anti-female animus, and therefore could be found to have contributed significantly to the hostile environment.'"  *Williams v. General Motors Corp.,* 187 F.3d 553, 565 (6th Cir. 1999), *quoting, Lipsett v. University of Puerto Rico*, 864 F.2d 881, 905 (1st Cir. 1988), Plaintiff has not shown that her treatment evinces "anti-female animus."  Even if this "harassment" was based on gender,

and males were not subjected to the same treatment, these incidents are no more than "ordinary" discrimination, and Plaintiff was expected to remain on the job while seeking redress.

Plaintiff's testimony regarding the "grumpy" and "mean way" in which Lucas addressed her is insufficient as well.  The Supreme Court has explained that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), *quoting Oncale v. Sundowner Offshore Srvcs., Inc.*, 523 U.S. 75, 80 (1998).

In addition, under the "employer" inquiry, Plaintiff has not shown that Defendant or Lucas intended the work environment to cause her to resign.  Even if the internal investigation instigated by Lucas is viewed as harassment, there is nothing in the record which shows that Plaintiff's resignation was a foreseeable consequence of the investigation.  Plaintiff was not even aware of the investigation until after Lucas' suspicions of misconduct were confirmed.

Based on the foregoing, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.

E.     ADA.

Under the ADA, it is illegal for any covered entity to discriminate against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a).[7]

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that states are immune to suits for money damages under Title

---

[7]The parties do not dispute that Defendant is a covered entity.

I of the ADA.  Plaintiff argues that Defendant's immunity does not extend to prospective

equitable relief or claims brought pursuant to 42 U.S.C. § 1983.

First, the Sixth Circuit has expressly rejected Plaintiff's argument regarding Eleventh

Amendment immunity and prospective equitable relief under the ADA.  Carten v. Kent

State University  282 F.3d 391, 397 (6th Cir. 2002) (holding that  Eleventh Amendment

immunity applied equally to ADA claims for monetary and equitable relief brought directly

against the state).   Secondly, despite repeated references in her Memorandum in

Opposition to Defendant's motion, Plaintiff has not plead a section 1983 action in her

Complaint.   Therefore, both arguments are unavailing, and Defendant is entitled to

summary judgment on Plaintiff's ADA claim.

F.    Rehabilitation Act.

Under the Rehabilitation Act:

No otherwise qualified individual with handicaps in the United States, as
defined in section 706(8) of this title, shall, solely by reason of her or his
handicap, be excluded from the participation in, be denied the benefits of, or
be subjected to discrimination under any program or activity receiving
Federal financial assistance.

29 U.S.C. § 794.  In *Nihiser v. Ohio Environmental Protection Agency*, 269 F.3d 626, 628-

29 (6th Cir. 2001), the Sixth Circuit held that Ohio has waived Eleventh Amendment

immunity against Rehabilitation Act claims.

The Sixth Circuit analyzes Rehabilitation Act claims based on circumstantial

evidence using the *McDonnell Douglas* burden-shifting analysis.   *Burns v. City of

Columbus*, 91 F.3d 836, 842 & n. 8 (6th Cir. 1996).

To establish a *prima facie* case under the Rehabilitation Act, the plaintiff must prove

(1) that he or she is a "handicapped person" under the Act; (2) that he or she is "otherwise

qualified;" (3) that he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his or her handicap; and (4) that the program or activity receives federal funds.  *Id.* at 841.

The Court finds that Plaintiff cannot establish either the first or the third prong.

Under the Rehabilitation Act, an individual must (1) have a physical or mental impairment which "substantially limits" him or her in at least one "major life activity," (2) have a record of such an impairment, or (3) be regarded as having such an impairment. 29 U.S.C. § 705(20)(B).  By statute, ADA standards apply in Rehabilitation Act cases alleging employment discrimination. 29 U.S.C. § 794(d).  The Supreme Court has held that under the ADA, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002).  In addition, the Court has explained that the word "substantially" in the phrase "substantially limits" suggests "considerable" or "to a large degree." *Id.* at 196.  Major life activities are "activities that are of central importance to daily life, including "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* at 197; 45 C.F.R § 84.3(j)(2)(ii).

Here, Plaintiff has not submitted evidence that her headaches or depression substantially limit one or more of her major life activities.  At most, Plaintiff alleges that there are times when she has to go into a dark room without any noise until they subside. Plaintiff also states that she has had to take off work to have pain block injections.  Neither of these situations reach the level of substantially limiting a major life activity.

Under the third prong, the plaintiff must establish that the defendant knew or believed that he or she was handicapped.  *Burns,* 91 F.3d at 843, *citing, Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1181 (6th Cir. 1993).  As the Sixth Circuit has reasoned, unless the defendant "knew or believed that the plaintiff was disabled, or knew that the symptoms were caused by a disability as defined by law, it would be impossible for the grantee to have made its decision *because* of the disability, let alone *solely* because of the disability. *Id.* (emphasis in original).  *Id.* at 844.  Here, Plaintiff has not established that Defendant knew or believed she was handicapped.  The only evidence in the record of Defendant's knowledge is Plaintiff's own unsupported statements in her affidavit. Therefore, Defendant is entitled to summary judgment on Plaintiff's Rehabilitation Act claim.[8]

G.    Ohio Revised Code § 4112.02.

Under Ohio Revised Code § 4112.02 (A), it is an unlawful discriminatory practice:

> For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

As this Court has recognized, the State of Ohio and its departments have only consented to be sued in the Ohio Court of Claims under Ohio Revised Code Chapter 4112,

---

[8]While a claim based on a hostile work environment has been recognized under the Rehabilitation Act, *Spells v. Cuyahoga Community College*, 889 F.Supp. 1023, 1027 (N.D.Ohio 1994), *citing, Pendleton v. Jefferson Local School District Board of Education*, No. 91-3126, 1992 WL 57421 (6th Cir. Mar. 25, 1992), at *5-6, any such claim, if alleged by Plaintiff, would fail for the same reasons.

and have not consented to be sued in federal court.  *Henry v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 162 F.Supp.2d 794, 803 & n.8 (S.D.Ohio 2000).  "Absent a state's unequivocal consent, the Eleventh Amendment prohibits a plaintiff from pursuing state-law claims against a state in federal court."  *Id.*, *citing*, *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994).  Therefore, Plaintiff's claims under Chapter 4112 are barred by the Eleventh Amendment, and Defendant is entitled to summary judgment on these claims.

      H.    <u>Intentional infliction of emotional distress</u>.

Under Ohio law, " '[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.' " *Yeager v. Local Union 20*, 453 N.E.2d 666 (1983) (citing Restatement (Second) of Torts 77 § 46(1) (1965)).  However, as this Court has previously recognized, "under Ohio law, an adverse employment action, even if based upon discrimination, does not amount to extreme and outrageous conduct without proof of something more." *Benge v. General Motors Corp*., 267 F.Supp.2d 794, 805 (S.D.Ohio 2003); *Black v. Columbus Public Schools*, 124 F.Supp.2d 550, 588 (S.D.Ohio 2000).  "If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc*., 173 F.3d 365, 376 (6th Cir. 1999).

Here, Plaintiff has not shown that she suffered an adverse employment action, and there is nothing in Plaintiff's Complaint which rises to the level of "extreme and outrageous

conduct." Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

Based on the foregoing, it is hereby ordered as follows:

1. Plaintiff's Motion to Strike Affidavit of Kurt Shearer and BCI Internal Investigation Report (Doc. 35) is **DENIED**;

2. Motion to Strike Plaintiff's Affidavit (Doc. 36) is **GRANTED** in part and **DENIED** in part;

3. Plaintiff's Motion to Strike Defendant's Reply (Doc. 41) is **DENIED**;

4. Defendant's Motion for Summary Judgment (Doc. 27) is **GRANTED**; and

5. This matter shall be terminated and stricken from the docket of this Court.


**IT IS SO ORDERED.**


    /s/ Michael H. Watson
Michael H. Watson, Judge
United States District Court